**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES J. GUARNIERI, JR.,

     Plaintiff,

        v.

DURYEA BOROUGH, et al.,

     Defendants.

CIVIL ACTION NO. 3:05-CV-1422

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Defendants' Motion for Summary Judgment.  (Doc. 39.)  For the reasons set forth below, the Defendants' motion will be granted in part and denied in part.  Defendants' motion will be granted with respect to the Fourth Amendment claims, which are inapplicable to this case.  Defendants' motion will also be granted with respect to the Fourteenth Amendment post-deprivation procedural due process claim, as the Plaintiff received post-deprivation adequate process through the collective bargaining agreement's grievance procedure.  Defendants' motion will also be granted with respect to the Fourteenth Amendment pre-deprivation due process claim, as Plaintiff has failed to demonstrate sufficient evidence of a liberty interest, and the Plaintiff received sufficient process in the post-deprivation hearing.  Defendants' motion will be granted with respect to the First Amendment retaliation claim based upon Plaintiff's speech on police and union matters, as Plaintiff has failed to demonstrate sufficient evidence of protected speech.  Defendants' motion will be denied with respect to the First Amendment retaliation claim based upon the Plaintiff's filing of the 2003 grievance as questions of material fact exist with respect to this claim.  The First Amendment retaliation claim in

Count III based upon the right of association will be denied, due to outstanding questions of material fact.  Finally, the Court will not address the First Amendment retaliation claim in Count IV, as the Defendants have not moved on that count in their motion.

As a federal question is before the Court pursuant to Title 42 of the United States Code, section 1983, the Court exercises jurisdiction over this action pursuant to section 1331 of Title 28 of the United States Code ("federal question").


**BACKGROUND**

### I.      Factual Background

The Plaintiff in this case is Charles J. Guarnieri, Jr., who was appointed Police Chief of Duryea Borough in September of 2000.  (Defs.' Statement of Material Facts in Support of Mot. For Summ. J. ¶ 1, Doc. 40.)  Plaintiff was terminated from his position in February of 2003, but reinstated to his position in January of 2005.  (*Id.* ¶ 2-3.)  Upon his return to work on January 21, 2005, Guarnieri was presented with eleven (11) directives, which he was required to follow as Police Chief of Duryea Borough.  (*Id.* ¶ 4.)  These directives stated:

> 1.      Your daily shift consists of eight hours.  You are not to work more than eight hours per day or more than forty hours per week unless you receive express permission from Borough Council.  You are to go home at the end of your eight hour shift.
>
> 2.      You are not to attend council meetings as the chief of police and will not be paid for attending council meetings.  You may only attend as a citizen.
>
> 3.      You must follow the purchase order system. You personally will be responsible for getting all purchase

orders signed for your department.

4.      The dayshift officer must observe the arrival and dismissal times of the Holy Rosary School.  Hours are 7:45a.m.-8:20a.m. and 2:00p.m.-2:30p.m.  This has become a daily practice and must be continued.  Any reason that this is not completed must be in writing and included in your weekly written report.

5.      You must patrol 4-5 hours during your eight hour shift.  Proof of patrol will be a copy of the daily mileage log.  Therefore, a copy of the daily mileage log of all shifts must be included with your weekly report to be handed in on Monday.

6.      Council will issue directives to the borough secretary and to the borough solicitor.  Any borough council directive which you receive from either the borough solicitor or the borough secretary should be treated as a directive of the borough council.  Accordingly, you are required to follow any and all directives given to you by borough council, whether directly, or indirectly through the borough secretary or the borough solicitor.

7.      You will submit a weekly written report to the borough secretary on the following Monday by 1:00 p.m.  This report shall include a detailed description of your daily activities, including the task of patrolling the Holy Rosary bus stop.  Proof of your activities shall include the time at which the tasks were performed.  In addition, you will include the starting and ending mileage on the patrol vehicle for the time in which you are patrolling.

8.      A copy of the monthly schedule for the police department must be given to the borough secretary by the first of the month.

9.      The police car is to be used for official business only.  Only borough officials and passengers of officials business only are allowed in the police car.

10.     The Duryea municipal building is a smoke free building.  The police department is not exempt from this smoking ban.  Random checks will be done to insure that the

building is smoke free.  You will be held responsible for
your department to adhere to the no smoking
regulation.

11.    As Chief of Police, you are to work the dayshift, which
is Monday through Friday 7:00a.m.-3:00p.m.  As your
employer, Duryea Borough Council wants our Chief of
Police to be visible and accessible to the public during
the dayshift hours.

(Pls. Counterstatement to Defs.' Statement of Material Facts, January 21, 2005

Directives, Doc. 42  Ex. A.)  Plaintiff then filed a grievance to these directives pursuant to

the Collective Bargaining Agreement on January 29, 2005.  (Doc. 40 ¶¶ 5-6.)  However,

Plaintiff's grievance was not resolved through the grievance procedure.  (*Id.* ¶ 8.)  The

grievance then proceeded to Arbitration.  (*Id.* ¶ 9.)  The arbitrator issued an award with

respect to this grievance on February 15, 2006.  (*Id.* ¶ 10.)  The arbitrator retained

jurisdiction for one-hundred and twenty (120) days following his award in order to assist in

the implementation of the award.  (*Id.* ¶ 11.)  On or about June 2, 2006, Defendants

issued a set of revised directives to Plaintiff.  (*Id.* ¶ 12.)  On July 3, 2006, the arbitrator

issued his final award.  (*Id.* ¶ 13.)

## II.    Procedural Background

On July 18, 2005, Plaintiff filed a Complaint alleging civil rights violations of his

First, Fourth, and Fourteenth Amendment rights.  (Doc. 1.)   The Defendants filed their

Answer on August 29, 2005.  (Doc. 8.)  The Plaintiff then filed an Amended Complaint on

December 21, 2006.  (Doc. 28.)   On December 29, 2006, the Defendants filed their

Answer to the Amended Complaint.  (Doc. 43.)  Defendants filed the present Motion for

Summary Judgment on December 22, 2006.  (Doc. 39.)  This motion is fully briefed and

ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

Plaintiff alleges that Defendants violated section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

Plaintiff further alleges that Defendants are liable under Section 1983 for violations of their constitutional rights under the First Amendment, Fourth Amendment, and Fourteenth Amendment based upon their actions under color of law.

6

**I.      Fourth Amendment Claim**

In the statement of jurisdiction, Plaintiff alleges violations of the  "First, Fourth and Fourteenth Amendments" to the United States Constitution.  (Am. Compl. ¶ 15, Doc. 38.) The Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures, has no applicability to this case.

**II.     Count I - Fourteenth Amendment Due Process**

In Count I of the Amended Complaint, Plaintiff Guarnieri alleges that he was denied both pre-deprivation and post-deprivation process pursuant to the Fourteenth Amendment.  To establish a cause of action for a procedural due process violation, Plaintiff must first prove that a person acting under color of state law deprived him of a protected property or liberty interest; and second, he must show that the procedures available to him failed to provide him with due process of law.  *See, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

A.      Post-Deprivation Process

The Third Circuit Court of Appeals has repeatedly held that, "in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements 'even if the hearing conducted by the Employer . . . [is] inherently biased.''" *Leneny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (quoting *Dykes v. Southeastern Pa. Trans. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995)).  Thus, "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, *unless* those procedures are unavailable or patently inadequate."

7

*Alvin*, 227 F.3d at 116 (emphasis added).

In response to the January 21, 2005, Plaintiff Guarnieri elected to file a grievance pursuant to the Collective Bargaining Agreement, and proceeded through the grievance process to arbitration.  Therefore, post-deprivation process was both available and utilized.  Plaintiff has presented no evidence that the arbitration proceedings were inadequate.  Furthermore, although violations of post-deprivation process are alleged in the Plaintiff's Amended Complaint, the Plaintiff states in his brief that he is not seeking a claim for post-deprivation due process.  Therefore, Defendants' motion for summary on the post-deprivation due process claim will be granted.

        B.        Pre-Deprivation Process

Plaintiff also alleges that he was denied constitutionally required pre-deprivation procedures pursuant to the Fourteenth Amendment.  To establish a cause of action for a pre-deprivation procedural due process violation, the Plaintiff must prove both that a person acting under color of state law deprived him of a protected property or liberty interest; and that the procedures available to him failed to provide him with due process of law.  *See, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

        *1.  Property Interest*

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  In Pennsylvania, police forces are protected under the Police Tenure Act, 53 P.S. § 811 *et seq.* (protecting police forces of less than three full-time officers)

and  the section on Civil Service for Police and Firemen, 53 P.S. § 46171 *et seq.* (protecting police forces of three full-time officers or more), both of which provide extensive procedural protections to a police officer.  The section on Civil Service for Police and Firemen states that "[n]o person shall hereafter be suspended, removed or reduced in rank as a paid employee in any police force, except in accordance with the provisions of this subdivision."  53 P.S. § 46171.  Similarly the Police Tenure Act on removals states that "No person employed as a regular full time police officer . . . shall be suspended, removed or reduced in rank except for the following reasons. . . . " 53 P.S. § 812. Furthermore, both sections create the right to demand a public hearing upon suspension or dismissal and the right to appeal the results of a public hearing to the Pennsylvania Court of Common Pleas. 53 P.S. § 814, 815, 46191.  The Civil Service Act also creates the right to request a hearing in the event of a reduction in rank.  53 P.S. § 46191.   In this case, the reinstatement of the Plaintiff created a third full-time officer, but the furlough of another officer reduced the force to two full-time officers.  However, it is irrelevant as to which code section applies.  Both sections guarantee that a police officer may not be suspended, removed, or reduced in rank except for cause.  Since "federal constitutional standards rather than state statutes define the requirements of procedural due process," the state law provisions are irrelevant.  *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987).

The Plaintiff also alleges a property interest which arises from the Collective Bargaining Agreement.  Plaintiff cites numerous articles within the agreement, which create a potential property interest.  For example, Article 17 acts similarly to the Police Tenure Act, and states that

9

> No full time police officer covered by this agreement shall be discharged, suspended or demoted except for "just cause" as defined in the civil service provisions of the Pennsylvania Borough Code (53 p.s. Section 46190).  It is understood and agreed that <u>ALL</u> matters of discipline will be determined through a grievance procedure established by <u>Article 16</u> of the current Collective Bargaining Agreement.

(Collective Bargaining Agreement between Duryea Borough and The Duryea Borough Police Department, January 1, 2004 through December 31, 2005, Art. 17, Doc. 47 at 21.) Therefore, a property interest may arise through a reduction in rank or demotion within the bounds of the Collective Bargaining Agreement, as well as within the ambit of state law.  Plaintiff's potential property interest is an interest in his employment and rank as chief of police.

The Court must first consider whether a "reduction in rank" or "demotion" occurred to determine if a property interest exists, and secondly consider whether a hearing is required by federal procedural due process standards.  For a property interest to exist, the actions by the Defendants must be a "reduction in rank" or "demotion," as provided by state law.  Thus, the Court must determine if the January 21, 2005 directives created a constructive demotion or reduction in rank.  The Third Circuit Court of Appeals has considered whether a property interest may be implicated by a constructive demotion based upon the Police Tenure Act.  *See Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989).  In *Clark*, the plaintiff was a police officer who received a change in duties.  *Id.* 615-16.  The Plaintiff was also issued a number of directives by the Township.  *Id.* at 616.

The Third Circuit Court of Appeals noted that an actual rank reduction would be effectuated by a change in title.  *Id.* at 618.  A constructive reduction in rank would require other traditional indicia of change of rank to determine if a constructive reduction

10

occurred.  *Id.*  Such indicia include a change in pay, the imposition of duties normally given to employees of lower rank, substantially reduced responsibilities, termination of privileges of rank, and whether the changes were temporary or permanent.  *Id.*  The court held that the officer did not suffer a constructive demotion, as the changes were only effective for six (6) weeks.  Furthermore, the officer retained numerous police duties.  *Id.*

Plaintiff Guarnieri retained his rank as Chief of Police during the relevant time, and therefore did not suffer an actual demotion or reduction in rank.  Furthermore, the Plaintiff has not presented evidence that he received a reduction in pay, outside of the denial of overtime opportunities.  In any event, the Police Tenure Act does not create a right to overtime opportunities.

The Plaintiff was assigned numerous duties and changes in responsibilities by the January 21, 2005 directives. These duties included: (1) only working and eight hour shift; (2) not being permitted to attend council meetings as a police chief; (3)  following the purchase order system; (4) observing arrival and dismissal at a local school; (5) patrolling for four (4) to five (5) hours per day and logging the patrols; (6) submitting a weekly report of daily activities; (7) giving the police department monthly schedule to the borough secretary; (8) only using the police car for official business; (9) monitoring the Duryea municipal building for the no smoking violation; (10) and only being permitted to work the day shift. (January 21, 2005 Directives, Doc. 42  Ex. A).

These directives were a change in procedure from the Plaintiff's previous employment, and differed from the procedure and practice applicable to other officers and previous police chiefs.  The Plaintiff was previously present at Borough meetings prior to his termination, and had a name tag for questions.  (Guarnieri Dep. 122: 9-22, Apr. 27, 2006, Doc. 45 Ex. 15.)  Only after his return was he restricted from speaking at

Borough meetings in his capacity as police chief.  If he attended the meetings, the Plaintiff was restricted from answering any questions posed by the citizens.  (Guarnieri Dep. 32: 3-11, Doc. 45 Ex. 15.)  The Plaintiff also testified that from common knowledge, he knew that his department was the only department required to follow the purchase order system.  (Guarnieri Dep. 32:18-24, Doc. 45 Ex. 15.)  As for the monitoring of the arrival and dismissal of the local school, the Plaintiff stated that this was not a practice when he was previously employed with the police department.  (Guarnieri Dep. 34: 1-9, Doc. 45 Ex. 15.)  Although some officers did monitor the school when he could, he was not ordered or directed to do so.  (Guarnieri Dep. 35: 21-24, Doc. 45 Ex. 15.)  The Plaintiff testified that a police chief has numerous administrative duties, and may not ever patrol.  (Guarnieri Dep. 123:3-13, Doc. 45 Ex. 15.)  He further testified that no officer had ever been required to do a daily mileage log or weekly report.  (Guarnieri Dep. 37: 11-17, Doc. 45 Ex. 15.)  The Plaintiff also testified that he personally had never been required to write a written report when previously acting as police chief.  (Guarnieri Dep. 113: 4-12, Doc. 45 Ex. 15.)  Nor were any officers of lower rank required to fill out such a written report.  (Guarnieri Dep. 113: 4-12, Doc. 45 Ex. 15.)  Plaintiff similarly testified with respect to the reports to be turned in to the borough secretary.  (Guarnieri Dep. 39: 13-24, Doc. 45 Ex. 15.)  Furthermore, the Plaintiff testified that the officer acting as the police chief prior to his return was not restricted to the day shift.  (Guarnieri Dep. 47:23-48:13, Doc. 45 Ex. 15.)

Accordingly, these directives changed the Plaintiff's responsibilities and requirements.  Furthermore, the January 21, 2005 directives appear to be a permanent addition to the Plaintiff's responsibilities.  The Plaintiff testified that other police officers were not similarly restricted.

Such a change in responsibilities may constitute a constructive demotion as per *Clark*. The Court is of the opinion that such a change in responsibilities probably did not create a constructive demotion or reduction of rank. However, even if such actions did constitute a constructive demotion or change in rank, the Plaintiff would not be entitled to a pre-deprivation hearing based upon the three-step balancing test for determining violations of due process.

Presuming the Plaintiff has demonstrated a cognizable property interest, he must satisfy the three-step balancing test as to whether the deprivation occurred without due process of law. The factors to be weighed are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, the Plaintiff's private interest is an interest in the duties and responsibilities of his job. This interest is relatively insubstantial compared to other employment-related private interests. For example, the employee in *Loudermill* faced termination. 470 U.S. at 538. Similarly, the Supreme Court noted that a temporary suspension without pay is an insubstantial deprivation compared to the termination of *Loudermill*. *Gilbert v. Homar*, 520 U.S. 924, 932 (1997). Plaintiff's deprivation in this case is even less substantial than a temporary suspension without pay. The Plaintiff here only faced a change in responsibilities. He retained many of his duties, and continued to receive payment for his employment. The Court in *Gilbert* noted that so long as the employee received a sufficiently prompt post-deprivation hearing, the lost income of a

suspension would be insubstantial.  *Id.*  Under the reasoning of *Gilbert*, if the Plaintiff here received a prompt post-deprivation hearing, the loss of duties would be insubstantial.

In comparison, the Government has an interest in determining the duties and responsibilities of its employees.  The process currently afforded to the Plaintiff is one of post-deprivation process pursuant to the grievance procedure of the Collective Bargaining Agreement.  The additional process requested by the Plaintiff would be a pre-deprivation hearing prior to the issuance of any directives involving a change in duties or responsibilities.  However, there would be numerous fiscal and administrative burdens on the government if there was an additional, pre-deprivation hearing any time changes to an officer's duties occurred.   Such a requirement would be burdensome and unnecessary.  The Supreme Court specifically stated that due process does not always require a prior hearing.  *Id.* at 930.  The Court further held that "where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."  *Id.* (citations omitted).

The final factor requires the Court must consider the risk of erroneous deprivation.  By comparison to *Loudermill* and *Gilbert*, the purpose of such a hearing would be to assure that there are reasonable grounds to support the change in the Plaintiff's duties and responsibilities.  *See Gilbert*, 520 U.S. at 933-34.  The Plaintiff received prompt post-deprivation process, and therefore the risk of erroneous deprivation was low.

In weighing the factors to determine whether due process of law would be satisfied by a pre-deprivation hearing, the Court holds that such a hearing is unnecessary.  The Plaintiff received a post-deprivation hearing in the form of an arbitration pursuant to the grievance procedure of the collective bargaining agreement.  A pre-deprivation hearing is

unnecessary because the Plaintiff's interest is insubstantial, the government's interest is important, the burden on the government to provide a prior hearing would be great, and a prompt post-deprivation hearing satisfies the requirements of procedural due process.

    *2. Liberty Interest*

    "An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously damage his standing and associations in the community . . ., for example, that he had been guilty of dishonesty, or immorality' or (2) 'imposes on him a stigma of other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Robb v. City of Philadelphia*, 733 F.2d 286, 293-94 (3d Cir. 1984) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).  "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Id.*  Thus, in the public employment context, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)).  It is required that the Plaintiff satisfy the "stigma-plus" test in order to successfully demonstrate a liberty interest pursuant to the Fourteenth Amendment.

    Plaintiff has stated that he has suffered injury to his reputation.  Plaintiff Guarnieri testified that the January 21, 2005 directives created a stigma to his reputation by assigning him duties consistent with officers of a lower rank.  (Guarnieri Dep. 87: 1-6; 88:6-10, Doc. 45 Ex. 15.)  At his deposition, Plaintiff Guarnieri discussed that these directives effected his reputation among his fellow officers, as well as with the citizens of Duryea.  (Guarnieri Dep. 49:19-51:14, Doc. 45 Ex. 15.)  For example, the directives forbid Plaintiff from participating at board meetings as the Chief of Police.  (Guarnieri Dep.

31:23-32:11, Doc. 45 Ex. 15.)  Thus, the Chief's standing with the community was

affected by his inability to communicate with the public in his official capacity at meetings,

when he was formerly able to do so.  (Guarnieri Dep. 31:23-32:11, Doc. 45 Ex. 15.)

Furthermore, to state a claim for stigma, the plaintiff must demonstrate that the

stigmatizing information was 'published' or otherwise disseminated by the public

employer to the public at large.  *Hill*, 455 U.S. at 236.  At this time, evidence has not been

presented that the board publicly announced these directives.

The demonstration of damage to reputation alone is insufficient to make out a

claim for deprivation of liberty.  Even presuming these directives were made public by the

Defendants, the reputational injury must be in addition to a "plus" factor.  *Hill*, 455 F.3d at

236.  In *Edwards v. California University of Pennsylvania*, 156 F.3d 488, 492 (3d Cir.

1998), the Third Circuit Court of Appeals considered the potential liberty interest of a

college professor who was temporarily removed from the classroom setting.  The court

held that "[s]ince it is undisputed that [the plaintiff] remained employed with pay at all

times relevant to this case, his claim is barred by decisions in *Robb* and *Sturm*.  While

[the plaintiff's] temporary removal from class duties may have further stigmatized him,

this action does not constitute a deprivation of employment." *Id.*  Thus, the plaintiff's

removal from classroom duties did not satisfy a liberty interest. *Id.*

Furthermore, in *Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073, 1078 (3d Cir.

1997), the Third Circuit Court of Appeals held that the plaintiff police officer did not

demonstrate a liberty interest beyond injury to reputation, as he maintained his official

rank.  The plaintiff officer argued that he lost potential future employment opportunities

due to this reputational injury, which would satisfy the "plus" factor. *Id.*  However, the

court held that "'possible loss of future employment opportunities is patently insufficient to

satisfy the requirement . . . that a liberty interest requires more than mere injury to reputation.'" *Id.* (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 620 (3d Cir. 1989)).

The Plaintiff has failed to demonstrate evidence of a "plus" factor beyond the injury to his reputation.  The Plaintiff maintained his official rank and pay at all times. Therefore, the Plaintiff did not suffer a liberty interest requiring a hearing for the purposes of due process.  Even if the Plaintiff did suffer the deprivation of a liberty interest, the Plaintiff's procedural rights would have been met by the post-deprivation hearing, as stated previously.

Therefore, as there is no material question of fact, and as the Defendants are entitled to summary judgment as a matter of law, the Defendants' motion will be granted as to Count I.

### III.      Count II - First Amendment Retaliation - Petition and Speech

#### A.      Right to Speech

Plaintiff alleges in his Amended Complaint that he engaged in speech relating to "Police and Union matters with Defendants once he was finally reinstated."  (Am. Compl. ¶ 33, Doc. 38.)  To properly allege an action for retaliation based on the First Amendment speech, a public employee must satisfy three elements: (1) the speech was protected and involved a matter of public concern,  *Connick v. Myers,* 461 U.S. 138, 147 (1983); (2) the plaintiff's interest in the speech outweighs the state's interest in "promoting the efficiency of the public service it performs," *id*. at 142 (citing *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968)); and (3) the protected speech was a substantial or motivating factor in the retaliation.  *Czurlanis v. Albanes*, 721 F.2d 98, 103 (3d Cir. 1983). The public employer can rebut the claim by demonstrating the same decision would be reached even in the absence of the protected speech.  *Id.* at 102.

"A public employee's speech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social or other concern to the community.'" *Baldassare v. State of New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).  Such an inquiry requires the court to consider the content, form, and context of the speech.  *Id.*  "The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'"  *Id.*  (quoting *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993)).

Plaintiff has failed to present evidence regarding the content, form, or context of the speech.  Although the Plaintiff alleges that the speech relates to "Police and Union matters," and that speech occurred after the reinstatement, there is no evidence presented regarding when the speech occurred, the forum where the speech occurred, the recipients of the speech, or the specific content of the speech.  Nor does the Plaintiff present evidence as to whether the speech was made with respect to his duties as a public official, or as a private citizen.  *Compare Baldassare*, 250 F.3d at 196 (finding that a public employee's speech was protected when made with respect to his official duties because it brought to light a specific wrongdoing on the part of government officials) *with Morris v. Crow*, 142 F.3d 1379 (11th Cir. 1998) (holding that speech made with respect to a public official's duties is not protected when the speech did not bring to light wrongdoing on the part of government officials).

Evidence of speech has been presented in the form of letters written to the Borough Council in 2002, prior to the Plaintiff's termination and the 2003 grievance.  However, this speech would be insufficient to present a First Amendment retaliation claim.  These letters were written almost three (3) years prior to the January 21, 2005 directives, and therefore, no reasonable juror would be able to find there was causation

between the 2002 letters and the 2005 directives.  Therefore, the Court will grant the

Defendants' motion for summary judgment on Count II's claim for a violation of Plaintiff's

freedom of speech.

B.      Right to Petition

To establish a First Amendment retaliation claim based upon the right to petition

by a public employee, the Court must employ a three-part inquiry.  First, the Plaintiff has

the burden of establishing that the activity is protected by the First Amendment. *San*

*Filippo v. Bongiovanni*, 30 F.3d 424, 430-31 & n.7 (3d Cir. 1994), *cert. denied*, 513 U.S.

1082 (1995).  Second, the Plaintiff must establish that the protected activity was a

substantial factor in the alleged retaliation.  *Id.*  In order to constitute retaliation within the

meaning of the second prong, the action must be sufficient to deter a person of ordinary

firmness from exercising his First Amendment rights.  *Thomas v. Independence*

*Township*, 463 F.3d 285, 296 (3d Cir. 2006).  To succeed on this second prong, Plaintiff

does not have to show "but-for" causation; rather, he must show only that "the exercise of

[his] First Amendment rights played some substantial role in the relevant decision."

*Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000).

If Plaintiff satisfies the first two prongs of the inquiry, the burden of persuasion

shifts to the defendant, who "may defeat plaintiff's claim by demonstrating that the same

action would have taken place even in the absence of the protected conduct."  *San*

*Filippo*, 30 F.3d at 430-31 & n.7.  This framework is borrowed from *Mt. Healthy City Sch.*

*Dist. Bd. of Educ. v. Doyle*, in which the defendant must demonstrate the third prong by a

preponderance of the evidence.  *See* 429 U.S. 274, 287 (1977).

_____1.      *Protected Activity*

The First Amendment's Petition Clause protects a public employee from retaliation

for filing non-sham lawsuits, grievances, and other petitions directed at the government or

its officials.  *See San Filippo v. Bongiovanni*, 30 F.3d 424, 439 (3d Cir. 1994), *cert.*

*denied*, 513 U.S. 1082 (1995).  The filing of a formal petition is protected without regard

to whether the petition addresses a matter of public concern.  *Id.* at 442.  Such a petition

is protected as long as it is filed in good faith, and the petition is not a sham.  *Id.*  Formal

mechanisms include a collective bargain agreement's grievance procedure, as noted in

*San Filippo*.  *Id*. at 442.  There is no evidence presented that Plaintiff's 2003 grievance

pursuant to the collective bargaining agreement was a "sham."  As a good faith grievance

pursuant to a collective bargaining agreement has specifically been protected within the

meaning of the Petition Clause by the Third Circuit Court of Appeals in *San Fillipo*,

Plaintiff has presented sufficient evidence of a protected activity.

      2.     *Ordinary Firmness and Substantial Factor*

The second element considers whether the alleged retaliatory actions were

sufficient to deter a person of ordinary firmness from exercising his First Amendment

rights.  *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).  "The

effect of the alleged conduct on the employee's freedom of speech need not be great in

order to be actionable, but it must be more than *de minimus*."  *McKee v. Hart*, 436 F.3d

165, 170 (3d Cir. 2006) (internal quotation marks omitted).  However, "[e]ven 'an act of

retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to

punish her for exercising her free speech rights,' may be actionable if sufficient 'to deter a

person of ordinary firmness' from exercising his or her First Amendment rights."

*O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (quoting *Suppan v.*

*Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000) (citing *Rutan v. Republican Party*, 497

U.S. 62, 76 n.8 (1990)).  The Third Circuit Court of Appeals further held that the threshold

for a First Amendment retaliation claim is very low and "a cause of action is supplied by all but truly de minimus violations." *Id.* (citing *Suppan*, 203 F.3d at 234-35).

The retaliatory act alleged to Plaintiff's filing of the 2003 grievance includes the issuance of the January 21, 2005 directives.  Plaintiff also testified that the Defendants retaliated against him by creating barriers to his receiving health and life insurance for his wife.  In Defendants' brief, they argue that the January 21, 2005 directives did not deter Guarnieri from exercising his First Amendment rights, and that Guarnieri did in fact file a second grievance challenging the directives eight (8) days after their issuance.  However, Defendants misconstrue the "ordinary firmness" standard.  The standard applied for First Amendment retaliation is an objective standard dealing with a person of ordinary firmness, and does not consider the firmness of the particular Plaintiff.  The question is whether a person of ordinary firmness would be deterred from further exercising his or her right to petition pursuant to the collective bargaining agreement.

There is a question of material fact as to whether a set of directives such as these would deter a person of ordinary firmness from exercising his rights under the collective bargaining agreement.  A reasonable factfinder could determine that the January 21, 2005 directives were sufficient "to deter a person of ordinary firmness" from exercising his First Amendment rights, and therefore summary judgment is inappropriate at this time.

Similarly, there is a question of material fact as to whether barriers to receiving health and life insurance policies for a spouse would deter a person of ordinary firmness from exercising his First Amendment rights.  Plaintiff testified that the Borough refused to accept his marriage license, which created problems with his insurance.  (Guarnieri Dep. 116: 8-21, Doc. 45 Ex. 15.)  He further testified that no other officer was required to provide a copy of their marriage license.  (Guarnieri Dep. 116: 8-21, Doc. 45 Ex. 15.)  A

reasonable factfinder could determine that barriers to receiving his health and life insurance were sufficient "to deter a person of ordinary firmness" from exercising his First Amendment rights, and therefore summary judgment is inappropriate at this time.

_____Furthermore, the second prong of the First Amendment retaliation inquiry requires the Plaintiff to demonstrate that the 2003 grievance was a substantial factor in the issuance of the January 21, 2005 directives.  Defendants claim that the Arbitrator already determined the purpose of the January 21, 2005 directives, and therefore the 2003 grievance procedure cannot be a substantial factor.

However, the Supreme Court held in *McDonald v. City of West Branch, Michigan*, 466 U.S. 284 (1984), that federal courts are not obligated to accord res judicata or collateral estoppel to an arbitrator's decision.  In *McDonald*, the plaintiff police officer brought a grievance through the collective bargaining process after his termination.  *Id.* at 285-86.  The arbitrator ruled against McDonald, but he did not appeal the decision.  *Id.* at 286, 287.  Rather, he filed a § 1983 action for violations of his First Amendment rights. *Id.* at 287.  The Court then considered whether the arbitration pursuant to the collective bargaining agreement obligated the federal court to apply res judicata or collateral estoppel to the § 1983 claims.  The Supreme Court defined collateral estoppel, holding that when a "' court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Id.* at 287 n.5 (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)).

The Court noted that "arbitral factfinding is generally not equivalent to judicial factfinding," and therefore "in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial." *Id.* at 291, 292.  Thus, the Court held that

> according preclusive effect to arbitration awards in § 1983
> actions would severely undermine the protection of federal
> rights that the statute is designed to provide.  Therefore, we
> hold that in a § 1983 action, a federal court should not afford
> res judicata or collateral estoppel to effect an award in an
> arbitration proceeding brought pursuant to the terms of a
> collective bargaining agreement.

*Id.*  The Defendants argue in their brief that the January 21, 2005 directives were not a

substantial factor, as the arbitrator found that "the two (2) main reasons for the Borough

issuing directives . . . were for: (a) financial reasons . . . and (b) operational reasons." (In

the Matter of the Arbitration between Duryea Borough Police Department and Borough of

Duryea, AAA Case No. 14 300 00419 05 RVB, Implementation of Award**,** Doc. 40 Ex. B

at 2-3.) Essentially, Defendants argue that collateral estoppel exists as to the rationale for

the January 21, 2005 directives, and therefore the 2003 grievance cannot be a

substantial factor.  However, the Supreme Court does not permit collateral estoppel

based upon arbitration pursuant to a collective bargaining agreement.   Although the

arbitrator "'decided an issue of fact or law necessary to its judgment,'" this decision does

not preclude this Court from considering the rationale behind the January 21, 2005

directives, as a collective bargaining agreement's arbitration does not create collateral

estoppel for a later § 1983 claim.   *McDonald*, 466 U.S. at 287 n.5 (quoting *Allen v.*

*McCurry,* 449 U.S. 90, 94 (1980)).

     To succeed on the substantial factor element, Plaintiff does not have to show

"but-for" causation.  *Suppan*, 203 F.3d at 236.  Defendants Dommes and Morreale

testified that the council fought hard against Plaintiff Guarnieri in his 2003 grievance.

(Dommes Dep. 48: 5-8, Apr. 28, 2006, Doc. 45 Ex. 13; Morreale Dep. 36:6-37:16, Apr.

28, 2006, Doc. 45 Ex. 12.)  Furthermore, Defendant Morreale further stated that she was

of the opinion that the council was not in favor of Plaintiff Guarnieri returning.  (Morreale

Dep. 36:21-37:2, Doc. 45 Ex. 12.)  Furthermore, deposition testimony by Mayor Keith

Moss reflects his belief that the directives were issued "Because of him filing the

grievance and that, and that he won his job back.  I think they just wanted to do

something to him."  (Moss Dep. 11:3-7, July 18, 2006, Doc. 45 Ex. 17.)   Plaintiff

Guarnieri received the January 21, 2005 directives on the first day of his return after the

2003 grievance procedure.  (Guarnieri Dep. 22:11-18, Doc. 45 Ex. 15.)  Furthermore,

these directives were only issued to Plaintiff Guarnieri, and the other officers were not

issued similar directives.  (Guarnieri Dep. 39:13-24, Doc. 45 Ex. 15.)   Therefore, there is

question of material fact as to whether the protected activity was a substantial or

motivating factor in issuance of the January 21, 2005 directives.

_____Similarly, there is a question of material fact as to whether the barriers to receiving

health and life insurance were caused in retaliation for the Plaintiff's actions.  There is a

question of material fact as to whether Plaintiff's actions were a substantial factor in the

alleged retaliation.  A reasonable factfinder could hold that the Defendants created

barriers to receiving life and health insurance in retaliation for Plaintiff's actions.

>    *3.*    *Same Action in Absence of Protected Conduct*

After consideration of the first two elements of the retaliation test, the burden of

persuasion shifts to the defendant, who "may defeat plaintiff's claim by demonstrating

that the same action would have taken place even in the absence of the protected

conduct."  *San Filippo*, 30 F.3d at 430-31 & n.7.

The Defendants suggest in their brief that the directives were "reasonably related

to the legitimate goals that it was attempting to accomplish and that they were within its

rights as an employer."  (Defs.' Brief in Supp. of Mot. for Summ. J. at 14, Doc. 41.)  Thus,

Defendants argue that the directives would have been issued even in the absence of the

Plaintiff's petition.  For example, Defendant Morreale testified in her deposition that the Chief's overtime was limited in Directive 1 because "financially, they were spending more money than was budgeted for the salaries, so it created a budget problem."  (Morreale Dep. 43: 13-15.)  As to Directive 2, Morreale similarly opined that Plaintiff was restricted from attending the council meetings as chief of police because "I think council felt that sometimes the meetings run a couple of hours and there was no involvement on [Chief Guarnieri] and we were trying to save money."  (Morreale Dep. 164:25-165:3.)     In Directive 3, Plaintiff was required to follow the purchase order system. Defendant Morreale noted that the Street Department had a purchase order policy procedure, which it followed from the time of the institution of the purchase order procedure.  (Morreale Dep. 42:17-43:12.)  She further testified that she believed that Plaintiff Guarnieri received a copy of the purchase order policy.  (Morreale Dep. 42: 11-15.)  Furthermore, Morreale testified that Plaintiff was not the only department head required to get signed purchase orders, stating that "Each department head was responsible personally to get the purchase orders signed, and they were just telling him that in writing in the directives when he came back."  (Morreale Dep. 171: 10-13.)     Directive 4 required that Plaintiff go to Holy Rosary School at the arrival and dismissal of the school day.  In response to questioning on this directive, Defendant Morreale testified that

> We had had some problem with the truck traffic on
> Stephenson Street, and we had a letter at a council meeting
> about the safety of the children at the Holy Rosary School.
> And the officer in charge had gone done there every day, and
> the people at the school appreciated it so they just wanted the
> chief to know and they wanted the practice to continue.

(Morreale Dep. 172:25-173:7.)  Defendant Morreale also testified as to the rationale for Directive 5, requiring the Plaintiff to patrol for four (4) to five (5) hours per day.  She noted

that "while [Plaintiff] was off, the officer in charge patrolled a lot and people liked seeing the police car and they wanted him visible to the public."  (Morreale Dep. 175: 14-16.)

Defendant Dommes also testified as to the rationale behind the directives.  She testified that

> we knew we had a problem with Chief Guarnieri following orders.  Prior to his termination he would not listen to myself, to the borough secretary, to the solicitor. . . .[our solicitor] said you can put directives to him in order for him to - for it to be clear what us as employers want him to do as an employee.

(Dommes Dep. 95:23-96:5.)

Therefore, the Defendants have presented some evidence demonstrating that same action would have taken place even in the absence of the protected conduct, in the case of at least some of the directives.  However, there is a question of material fact as to whether the actions would have taken place in the absence of Plaintiff's petition. Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that there are issues of material fact as to whether that the alleged activity would deter a person of ordinary firmness, if the protected activity was a substantial factor in the alleged retaliation, and if the same action would have occurred in the absence of the protected conduct.  Because of the factual disputes surrounding the second and third prong, Defendants' motion for summary judgment on Count II's violation of the right to petition will be denied.

### IV.     Count III - First Amendment Retaliation - Association

Plaintiff further alleges that the Defendants violated his First Amendment rights by retaliating against him for his affiliation with the union, the Fraternal Order of Police, and his assistance in union matters.  In order to show a violation of Plaintiff's right to freedom of association, Plaintiff Guarnieri must prove that the Borough retaliated against him

because of his union activities.

To properly allege an action for associational retaliation, a public employee must satisfy three elements: (1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation. *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

A.    Protected Activity

Union membership is protected by the right to association within the First Amendment. *Service Employees Int'l Union, AFL-CIO v. County of Butler, Pa.*, 306 F.Supp. 1080, 1082 (W.D. Pa. 1969) (citing *Thomas v. Collins*, 323 U.S. 516 (1945)). The Supreme Court has

> recognized that "one of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means," *NAACP v. Clairborne Hardware Co.,* 458 U.S. 886, 933, 102 S.Ct. 3409 (1982), and our recognition of this right encompasses the combination of individual workers together in order [to] better assert their lawful rights. *See e.g. Railroad Trainmen v. Virginia,* 377 U.S. 1, 5-6, 84 S.Ct. 1113, 1116-17 (1964).

*Lyng v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW,* 485 U.S. 360, 364 (1988).

At this time, a circuit split exists regarding whether the protected activity also must be a matter of public concern to satisfy the first element when the protected activity is association. *See Sanguini v. Pittsburgh Bd. of Public Educ.*, 968 F.2d 393 (3d Cir. 1992). In *Sanguini*, the Third Circuit Court of Appeals acknowledged the circuit split, but declined to decide whether *Connick* applied to freedom of association cases. *Id.* at 400

(noting that the Sixth and Seventh Circuit Courts of Appeals apply the *Connick* test to freedom of association, but that the Eleventh Circuit Court of Appeals refused to do so).

In *Van Compernolle v. City of New Zealand*, No. 06-1904, 2007 WL 2015985, at *7 (6th Cir. July 9, 2007), the Sixth Circuit Court of Appeals discussed *Boals v. Gray*.  The court recognized that in *Boals,* there was "'no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid First Amendment claim under *Connick* and *Pickering*.'"  *Id.* (quoting *Boals*, 775 F.2d at 693).  The court further addressed the difference between being a union member and acting or speaking as one.  *Id.*  The court thus distinguished the two, stating that "while a government employer cannot take adverse action against an employee solely because that employee is a union member, the First Amendment does not protected union-related speech . . . unless that speech . . . addresses a matter of public concern."  *Id.* (citing *Boals*, 775 F.2d at 693).

Mere membership in a union is distinguishable from speech or activities as part of a union.  Although speech or actions may require the speech to be a matter of public concern, membership alone does not require a matter of public concern.  Therefore, Plaintiff's membership in a union does not require the public concern test, and the membership is protected within his First Amendment rights.  *See, e.g. Glass v. Snellbaker*, Civ. A. No. 05-1971 (JBS), 2007 WL 1723472, at *5 n.2 (D.N.J. June 14, 2007) ("When a public employee's organization performs some activities that are of public vonernc and some that are not, it appears that if an employer . . . punishes the right to associate . . ., then the employer also incidentally burdens protected rights. . . .")

B.      Ordinary Firmness and Substantial Factor

_____The Plaintiff asserts that the January 21, 2005 directives were instituted in

retaliation for the Plaintiff's association with the Fraternal Order of the Police.  As stated previously, there is a question of material fact as to whether the retaliation would deter a person of ordinary firmness from exercising his First Amendment rights.  In this count, the question is whether the directives would deter a person of ordinary firmness from participating as a member of a union.  This is a question of material fact for the jury.  Furthermore, there is a question of material fact to whether Plaintiff's membership in the union was a substantial factor in the alleged retaliation.  Plaintiff does not have to show "but-for" causation.  *Suppan*, 203 F.3d at 236.  The Defendants likely were aware of Plaintiff's membership in the Fraternal Order of the Police, as he had pursued a grievance pursuant to the Collective Bargaining Agreement against Duryea Borough for his termination.  Therefore, a reasonable juror could find that the January 21, 2005 directives were a substantial factor in the alleged retaliation.  As there are questions of fact with respect to the second prong of the retaliation test, the Court need not address the third prong.

### V.       Count IV - First Amendment Retaliation - Petition

The Defendants' motion for summary judgment does not mention or request summary judgment on Count IV.  Therefore, the Court will not address Count IV at this time.


**CONCLUSION**

Construing the facts in a light most favorable to Plaintiff, the Court finds that Defendants' motion for summary judgment should be granted in part and denied in part.  Defendants' motion will be granted with respect to the Fourth Amendment claims, which are inapplicable to this case.  Defendants' motion will also be granted with respect to the

Fourteenth Amendment pre-deprivation and post-deprivation procedural due process claims, as the Plaintiff adequate process through the collective bargaining agreement's grievance procedure.  Defendants' motion will be granted with respect to the First Amendment retaliation claim based upon Plaintiff's speech on police and union matters, as Plaintiff has failed to demonstrate sufficient evidence of protected speech. Defendants' motion will be denied with respect to the First Amendment retaliation claim in Count II based upon the Plaintiff's filing of the 2003 grievance as questions of material fact exist with respect to this claim.  Defendants' motion will also be denied as to Count III's First Amendment retaliation claim based upon the right of association due to outstanding questions of material fact.  Finally, as the Defendants have not moved on Count IV in their summary judgment motion, that Count will remain.

An appropriate order shall follow.


November 15. 2007                          /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES J. GUARNIERI, JR.,

     Plaintiff,

        v.

DURYEA BOROUGH, et al.,

     Defendants.

NO. 3:05-CV-1422

(JUDGE CAPUTO)

## ORDER

    **NOW**, this _____15th_____ day of November, 2007, **IT IS HEREBY ORDERED** that

Defendants' Motion for Summary Judgment (Doc. 39) is **GRANTED** in part and **DENIED**

in part as follows:

1.    Defendants' motion  will be **GRANTED** with respect to the Fourth Amendment

    claims.

2.    Defendants' motion will be **GRANTED** with respect to the Fourteenth Amendment

    claims for pre-deprivation and post-deprivation process in Count I.

3.    Defendants' motion will be **GRANTED** with respect to the First Amendment claim

    for violation of the right to free speech in Count II.

4.    Defendants' motion will be **DENIED** with respect to the First Amendment claim for

    violation of the right to freedom of petition in Count II.

5.    Defendants' motion will be **DENIED** with respect to the First Amendment claim for

    violation of the right to free association in Count III.

6.    Plaintiff's claim for violation of the right to freedom of petition pursuant to the First

    Amendment in Count IV will remain, as Defendants failed to move for its dismissal

in their motion.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge