**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES GUARNIERI,

      Plaintiff,

          v.

DURYEA BOROUGH, et al.,

      Defendants.

NO. 3:05-CV-01422

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are Defendants Duryea Borough, Ann Dommes, Lois Morreale, Frank Groblewski, Edward Orkis, Robert Webb, Audrey Yager, Joan Orloski, and Alfred Akulonis' post-trial motions.  These motions include a renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50, a Motion for a New Trial pursuant to Federal Rule of Civil Procedure Rule 59, and a Motion to Stay Proceedings to Enforce Judgment.  (Docs. 121, 127.)  Because sufficient evidence exists such that a reasonable juror could find for the Plaintiff, and because there is no significant error of law on which to grant a new trial, the Rule 50 and 59 motions will be denied.  As the Court will dispose of the Rule 50 and 59 motions in this Memorandum and Order, Defendants' motion to stay will be denied as moot.

## BACKGROUND

On July 18, 2005, Plaintiff Charles Guarnieri, Jr. filed a civil action against Duryea Borough, Ann Dommes, Lois Morreale, Frank Groblewski, Edward Orkis, Robert Webb, Audrey Yager, Joan Orloski, and Alfred Akulonis.  (Doc. 1.)  Plaintiff filed his Amended Complaint against these Defendants on December 21, 2006.  (Doc. 38.)  The Amended

Complaint alleged various claims including violations of his Fourteenth Amendment pre-

and post-deprivation due process rights, and several claims of First Amendment

retaliation.  (Doc. 38.)   Defendants filed an Answer to the Amended Complaint on

December 29, 2006.  (Doc. 43.)  On December 22, 2006, the Defendants moved for

summary judgment.  (Doc. 39.)   On November 15, 2007, the motion for summary

judgment was granted in part and denied in part.  (Doc. 51.)  The remaining claims

involved allegations of violations of Plaintiff Guarnieri's First Amendment rights.  (Doc.

51.)

The remaining counts went to trial on April 14, 2008. The jury returned a verdict on

April 17, 2008 in favor of the Plaintiff with respect to retaliation for the issuance of the

directives and the withholding of overtime compensation, and awarded forty-five

thousand, three-hundred and fifty-eight dollars ($45,358.00) in compensatory damages

and fifty-two thousand dollars ($52,000.00) in punitive damages.  (Doc. 101.)

Following trial, Defendants filed various post-trial motions, including a renewed

Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50, a

Motion for a New Trial pursuant to Federal Rule of Civil Procedure Rule 59, and a Motion

to Stay Proceedings to Enforce Judgment.  (Docs. 121, 127.)

These motions are fully briefed and ripe for disposition.


## LEGAL STANDARDS

### I.      Rule 50(b)

Under Rule 50(b), a party may renew its request for a motion for judgment as a

matter of law by filing a motion no more than ten (10) days after judgment is entered.

2

*See* FED. R. CIV. P. 50(b).  In the present case, Defendants' Rule 50(b) motion was timely

filed.  (Doc. 218.)  Judgment notwithstanding the verdict should be granted sparingly.

*See Walter v. Holiday Inns, Inc.,* 985 F.2d 1232, 1238 (3d Cir. 1993).  In deciding

whether to grant a Rule 50(b) motion:

> the trial court must view the evidence in the light most
> favorable to the non-moving party, and determine whether the
> record contains "the minimum quantum of evidence from
> which a jury might reasonably afford relief."  The court may
> not weigh evidence, determine the credibility of witnesses or
> substitute its version of the facts for that of the jury.  The court
> may, however, enter judgment notwithstanding the verdict if
> upon review of the record, it can be said as a matter of law
> that the verdict is not supported by legally sufficient evidence.

*Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 691-92 (3d Cir. 1993),

*abrogation on other grounds recognized by United Artists Theatre Circuit, Inc. v. Twp. of*

*Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003) (citations omitted).  A Rule 50 motion will be

granted "only if, viewing the evidence in the light most favorable to the nonmovant and

giving [the nonmovant] the advantage of every fair and reasonable inference, there is

insufficient evidence from which a jury reasonably could find liability." *Lightning Lube v.*

*Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993).  The question is not whether there is

literally no evidence supporting the non-moving party, but whether there is evidence upon

which the jury could properly find for the non-moving party.  *See Walter,* 985 F.2d at 1238

(citing *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir. 1978)).

## II.    Rule 59(a)

Under Rule 59(a), motions for a new trial must be filed within ten (10) days of the

date the judgment was entered.  *See* FED. R. CIV. P. 59.  Defendants' motion for a new

trial was timely filed.  (Doc. 209.)  The decision to grant a new trial is left to the sound

discretion of the trial judge.  *See Blackiston v. Johnson,* No. 91-5111, 1995 WL 563834, at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996). Courts have granted motions for a new trial where:  (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury.  *See Maylie v. Nat'l R. R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). Where the evidence is in conflict, and subject to two (2) or more interpretations, the trial judge should be reluctant to grant a new trial.  *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993).

## DISCUSSION

### I.    Renewed Motion for Judgment as a Matter of Law

Defendants first move for judgment as a matter of law after trial pursuant to Rule 50 of the Federal Rules of Civil Procedure.  Rule 50(b) provides, in relevant part:

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law. . . .

FED. R. CIV. P. 50(b).  Plaintiff argues that Defendants waived their right to a renewed motion for judgment as a matter of law when they failed to make a motion at the close of all evidence.  *See Kruczek v. Borough of Lansford*, Civ. A. No. 3:04-CV-1179, 2006 WL

1410620, at *1 (M.D. Pa. May 21, 2006) (Caputo, J.) (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 364 (3d Cir. 1999)) (finding Defendants waived their right to a renewed motion for judgment as a matter of law when they failed to raise the motion at the close of evidence).  Defendants, however, did renew their Rule 50 motions at the close of evidence.  (Trial Tr. vol. 3, 202-03, Apr. 16, 2008.)

Furthermore, *Kruczek* was decided prior to the 2006 Amendments to the Rule 50. The Advisory Committee Notes on the 2006 Amendment to Rule 50 state that "Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence. Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."

Defendants did properly renew their Rule 50 motion.  Even if they had not, Defendants need not raise a Rule 50 motion at the close of the evidence as per the 2006 Amendment to Rule 50(b).  Therefore, Defendants may renew their motion for judgment as a matter of law.

## II.    Punitive Damages

Defendants first argue that they are entitled to judgment as a matter of law as to the punitive damages award.  The jury awarded fifty-two thousand dollars ($52,000.00) in punitive damages to Plaintiff Guarnieri.  (Doc. 100.)  Defendants argue that the evidence at trial was insufficient to support this award.

"The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior."  *Memphis Cmty. Sc. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986).  "A jury may be permitted to assess punitive

damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The United States Constitution prevents "grossly excessive" punitive damage awards because such awards "further[ ] no legitimate purpose and constitutes an arbitrary deprivation of property." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-17  (2003). In determining if a punitive damages award is reasonable, the court must consider: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id*. at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996)).

"[T]he must important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 419 (quoting *Gore*, 517 U.S. at 575).  In evaluating reprehensible conduct, a court should look to whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.*

Defendants' argument focuses on this first prong of the three-pronged inquiry. Specifically, Defendants assert that none of the above stated factors were present in this case, and therefore an award of punitive damages is not warranted.  First, Defendants

note that the harm suffered by Plaintiff Guarnieri was economic, rather than physical. Second, Defendants note that the First Amendment retaliation claims did not effect the health or safety of others.  Third, Defendants argue that Plaintiff Guarnieri was not financially vulnerable.  Fourth, Defendants argue that the conduct was not repeated. Finally, Defendants assert that it was not the result of intentional malice, trickery, or deceit.

Although the facts do not support the first three (3) factors, the fourth and fifth factors are supported by the facts.  There is evidence in the record that actions against Plaintiff Guarnieri were repeated.  Such evidence included the fact that Plaintiff received the directives and was denied overtime pay, as found by the jury.  Furthermore, a reasonable juror could find that Defendants acted with malice in both issuing the directives and withholding the overtime pay.  In this case, a reasonable juror could find that the conduct on part of the Defendants was malicious or wanton, and that such conduct was reprehensible.  A reasonable juror could find that the directives were issued based upon wanton or malicious conduct based upon the fact that Plaintiff Guarnieri received the directives on January 21, 2005, upon his return to work after the conclusion of his grievance procedure.  A jury could also find the conduct of Defendants to be wanton or malicious with respect to the denial of overtime pay.  A jury could find that a fiscal retaliatory action of denying overtime pay to a  person who files a grievance to be wanton or malicious.  Although all of the factors are not supported by the facts, the fourth and fifth factor weigh in favor of the reasonableness of the jury's award.

The second prong of the punitive damages test considers the difference between the punitive damages and the actual or potential harm suffered by the plaintiff.  Here, the

compensatory damages awarded by the jury totaled forty-five thousand, three-hundred and fifty-eight dollars ($45,358.00), compared to fifty-two thousand dollars ($52,000.00) in punitive damages.  (Doc. 101.)   The Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award."  *State Farm*, 538 U.S. at 424.  However, the *State Farm* Court stated that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to significant degree, will satisfy due process."  *Id.* at 425.  Citing *Gore*, the Court noted that a four-to-one (4-to-1) ratio may be close to the constitutional limits.  *Id.*  In this case, the ratio of punitive to compensatory damages is slightly greater than a one-to-one (1-to-1) ratio.  The punitive damages in this case are not so great as to be constitutional excessive.

Finally, the Court is to consider the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. In this respect, Plaintiff cites to the case of *DeLuzio v. Monroe County*, No. 3:CV-00-1220,  2006 WL 3098033 (M.D. Pa. Oct. 30, 2006) (Vanaskie, J.), *aff'd* 271 Fed App'x 193 (3d Cir. 2008).  In *DeLuzio*, Judge Vanaskie denied the defendant's motion for judgment as a matter of law on a punitive damages award of twenty-five thousand dollars ($25,000.00) for a First Amendment claim.  *Id.* at *14-15.  The Third Circuit Court of Appeals affirmed the district court, noting that a jury could infer evil intent on part of the defendant, including from testimony about the defendant's hostility towards the plaintiff. 271 Fed. App'x at 198.

The jury in this case awarded fifty-two thousand dollars ($52,000.00) on two (2) claims of First Amendment retaliation.  The *DeLuzio* jury awarded twenty-five thousand

dollars ($25,000.00) for one (1) claim of First Amendment retaliation.  In comparison to *DeLuzio*, the punitive damages award granted by the jury on the First Amendment claims is not unreasonable.

The evidence supports the jury's award of punitive damages.  The award is reasonable based upon the ratio of the compensatory to punitive damages, the punitive damages award in similar cases, and the degree of reprehensibility of the Defendants' conduct.  For these reasons, the Court will deny the Defendants' motion for judgment as a matter of law on the punitive damages claim.

### III.    Matter of Public Concern

Defendants argue that the Court should award the Defendants judgment as a matter of law because Plaintiff's petition did not address a matter of public concern.  The Third Circuit Court of Appeals has previously held that the First Amendment's Petition Clause protects a public employee from retaliation for filing non-sham lawsuits, grievances, and other petitions directed at the government or its officials.  *See San Filippo v. Bongiovanni*, 30 F.3d 424, 439 (3d Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995).  The filing of such a petition is protected without regard to whether the petition addresses a matter of public concern.  *Id.* at 442.  A petition is protected as long as it is filed in good faith, and the petition is not a sham.  *Id.  San Filippo* noted that formal mechanisms of filing a grievance include grievance procedures pursuant to a collective bargain agreement.  *Id*. at 442.  Defendants note that the holding of *San Filippo* contravenes the law of numerous other circuit courts, and therefore this Court should grant judgment as a matter of law for the Defendants.  At this time, the Supreme Court has yet to decide the split in authority between the Third Circuit and other Courts of

9

Appeals.  Therefore, the law of *San Filippo* remains good law in this circuit.  As a good faith grievance pursuant to a collective bargaining agreement has specifically been protected within the meaning of the Petition Clause by the Third Circuit Court of Appeals in *San Filippo*, Defendants' motion for judgment as a matter of law will be denied on these grounds.

### IV.      Government Employee Filing a Petition

Defendants next argue that they should be granted judgment as a matter of law because Plaintiff Guarnieri was a public employee petitioning his government employer. Defendants cite *Foraker v. Chaffinch*, 501 F.3d 231, 248-49 (3d Cir. 2007) to support the argument that Plaintiff Guarnieri's public employee relationship with Duryea Borough created a lack of protected conduct within the meaning of the First Amendment.  Quoting the Supreme Court case of *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006), the *Foraker* court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 239. Based upon this rationale, the Third Circuit Court of Appeals held that when police officers complained to a state auditor about hazardous conditions at a firing range, they spoke pursuant to their duty as government employees.  *Id.* at 240.

Defendants cite the following language of the *Foraker* opinion in support of the proposition that a government employee's petition to his government employer is not protected: "[w]hile the Supreme Court did not address the question of whether the rule it announced in *Garcetti* applies to First Amendment retaliation claims based on a public employee's petitioning activities, as distinguished from his speech, there is good reason

10

to believe that it does." *Id.* at 248-49 (Greenberg, J., concurring).  This language appears in Judge Greenberg's concurring opinion, and is dicta regarding a public employee's petition rights.  Therefore, it is not binding law on this court.

Furthermore, the grievance filed by Plaintiff Guarnieri was not made pursuant to his "official duties."  Rather, he filed his grievance as a private citizen.  Plaintiff's filing of the grievance regarding the termination of his employment and the filing of this lawsuit were not actions taken pursuant to his "official duties" as chief of police.  Therefore, the *Garcetti* exception to First Amendment protection does not apply.  Defendants' argument for judgment on a matter of law will therefore be denied on these grounds.

## V.    Qualified Immunity

Defendants next contend that they were entitled to qualified immunity on Plaintiff Guarnieri's First Amendment retaliation claims.  The Third Circuit Court of Appeals in *Rouse v. Plantier* discussed the defense of qualified immunity:

> Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

182 F.3d 192, 196 (3d Cir.1999) (citations omitted).

In determining the applicability of qualified immunity, the Court must first consider "whether, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [government official's] conduct violated a constitutional right?'" *Cipriani v. Lycoming County Hous. Auth.*, 177 F. Supp. 2d 303, 326 (M.D. Pa. 2001) (McClure, J.) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  In this case, the jury concluded that

the government officials of Duryea did violate Plaintiff's constitutional rights - specifically,

Plaintiff's First Amendment rights.  The record reflects the jury's finding that Plaintiff

received the directives and was denied overtime payment because he filed a grievance

and a lawsuit.  The jury's verdict determined that this was the reason for the actions of

the government officials.  *Id.*  (noting that the jury's verdict reflected the violation of the

plaintiff's First Amendment rights).

The second step of the inquiry requires the Court to consider "'whether the right

was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201.)  The inquiry regarding

clearly established rights must be considered "in light of the specific context of the case."

*Id.* (quoting *Saucier*, 533 U.S. at 201.)  A claim for qualified immunity is denied when the

law is clearly established because "'a reasonably competent public official should know

the law governing his conduct' unless [he] can either demonstrate extraordinary

circumstances or that [he] 'neither knew nor should have known' about the legal right in

question." *Id.* (quoting *Gruenke v. Seip*, 225 F.3d 290, 299 (3d Cir. 2000) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).

Defendants argue that there are two (2) areas of the law which are not clearly

established.  First, Defendants argue that it is not clearly established that a government

employee may petition his government employer.  Second, Defendants argue that it is

not clearly established that the public employee's rights are protected when the matter is

one of private concern.

As stated in *Cipriani*, "the law was clearly established that a public employee, such

as plaintiff, could not be retaliated against for exercising his rights under the First

Amendment." *Id.* (citing *Baldassare v. New Jersey*, 250 F.3d 188, 201 (3d Cir. 2001)

12

(citing *Zamboni v. Stamler*, 847 F.2d 73, 80 n.7 (3d Cir. 1988)).  At the time of

Defendants' conduct, the law was clearly established that Defendants could not retaliate

against the filing of a grievance or the filing of a lawsuit.  *Id.* at 327-28.  No reasonable

government official in Defendants' position could believe that retaliating against Plaintiff

by issuing directives and denying overtime was appropriate conduct.  *Id.* at 328.

Furthermore, the law regarding petitions by a government employee was clearly

established.  The Supreme Court in *Garcetti v. Ceballos* only considered speech made

by government employees in the course of their "official duties."  547 U.S. 410 (2006).   It

is clear that a grievance regarding employment, and a lawsuit based upon the First

Amendment were not made pursuant to official duties.  As for *Foraker*, the language that

a government employee may not be able to file a petition against a government employer

is part of Judge Greenberg's concurrence, and is dicta.  Such language does not

overcome the clearly established right of a person to file a petition.

Defendants further argue that the law is not clearly established that a matter of

private concern is protected under the Petition Clause of the First Amendment.  Although

a number of other circuits have held otherwise, the law in the Third Circuit is clearly

established.  Specifically, in *San Filippo v. Bongiovanni*, 30 F.3d 424, 440 (3d Cir. 1994),

the Third Circuit Court of Appeals held that a petition is protected regardless of whether

the petition is a matter of public concern.  Therefore, there is a clearly established right to

petition for a matter of private concern in this circuit.

As the First Amendment law is clearly established, Defendants are not entitled to

qualified immunity, and not entitled to judgment as a matter of law on these grounds.

### VI.    Personal Involvement in Overtime

Defendants request that judgment as a matter of law be entered in favor or

Defendants Dommes, Morreale, Groblewski, Orkwis, Webb, Yager, and Orloski because

the record does not contain evidence of personal involvement or action with respect to

the withholding of Plaintiff Guarnieri's overtime pay.

"It is, of course, well established that a defendant in a civil rights case cannot be

held responsible for a constitutional violation which he or she neither participated in nor

approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3 198, 201-02 (3d Cir. 2000) (citing *Robinson

v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Township*, 50

F.3d 1186, 1190 (3d Cir. 1995).   Liability cannot be based solely on *respondeat superior*.

*Rode v. Dellarcripete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   "Personal involvement can be

shown through allegations of personal direction or of actual knowledge and

acquiescence."   *Id.*

Specifically, Defendants argue that the only Defendants named in relation to the

withholding of the overtime pay were Lois Morreale and Alfred Akulonis.   They assert that

the record reflects that the decision to withhold the pay was made by Defendant Akulonis,

and was dictated to the Borough Secretary, Lois Morreale.   Defendants first argue that

Lois Morreale was the Borough Secretary, and only performing her clerical duties in

informing Plaintiff Guarnieri of his denial of overtime.

The evidence in the record suggests that Lois Morreale was personally involved in

the withholding of Plaintiff Guarnieri's overtime pay.   Lois Morreale testified as to her role

in Plaintiff Guarnieri's overtime.   After the United States Department of Labor audited

Duryea Borough for violations, Ms. Morreale noted that the Department of Labor "gave

14

me until March 26th to have proof that I paid the overtime.  Oh, when he was leaving, I agreed to pay the overtime."  (Trial Tr. vol. 3, 141:11-17;21-23, Apr. 16, 2008.)   A reasonable juror could find that Ms. Morreale's "agreement" to issue the overtime check to Plaintiff Guarnieri established personal involvement by Ms. Morreale.

Next, Defendants argue that there is no evidence of a Council vote regarding the withholding of Plaintiff Guarnieri's overtime.  Furthermore, Defendants assert that there were no facts showing a discussion among the council members discussing the withholding of the overtime pay.  For these reasons, Defendants argue that Defendants Dommes, Groblewski, Orkwis, Webb, Yager, and Orloski should be granted judgment as a matter of law on the claim for overtime based upon a lack of personal involvement.

However, there is testimony from which a reasonable juror could find personal involvement on the part of the individuals.  Alfred Akulonis was asked "were you the person who *initially* refused to pay the $330 in overtime to Chief Guarnieri?"  (Trial Tr. vol. 1, 99:7-8, Apr. 14, 2008) (emphasis added).  Mr. Akulonis responded yes, and explained that he made that decision "because I didn't have - - I didn't have the facts."  (Trial Tr. vol. 1, 99:9-12, Apr. 14, 2008.)  Later in his testimony, Mr. Akulonis stated that the reason Plaintiff Guarnieri was denied overtime was that "[w]e did it because - - I mean, we didn't know if he worked or not. . . .  We didn't approve it.  In the directives it says that it has to be approved.  So we didn't approve it."  (Trial Tr. vol. 1, 100:17-22, Apr. 14, 2008.)  From this testimony, the "we" can be inferred to be that Council did not approve the overtime, which is why he was not paid overtime.

The testimony of Lois Morreale at trial is consistent with the notion that council was involved with the denial of overtime.  Ms. Morreale testified that

15

> Chief Guarnieri had been putting overtime — well, since the directives were in place, I believe the first directive said that overtime was only allowed if it was in extraordinary or emergency situations. . . . When I got the time sheet in December, I wrote a letter to Mayor Moss, and I wrote a letter to Chief Guarnieri asking them to explain the reasons for the overtime, and I didn't get any response.

> And so *council* decided not to issue the check for the overtime because they had told him and told him and nothing was ever done.  So they thought about withholding his time maybe we'd get an explanation and they would pay him, but the explanation never came. So this — they withheld his pay.

(Trial Tr. vol. 3, 140:16-141:9, Apr. 16, 2008) (emphasis added).  From the testimony of Lois Morreale, it also appears that the members of Duryea Council were involved in the withholding of Plaintiff Guarnieri's overtime pay.  Based upon the testimony at trial, there is sufficient evidence of personal involvement of the members of Council in the denial of Plaintiff Guarnieri's overtime pay.  Therefore, the Court will deny Defendants' motion for judgment as a matter of law on these grounds.

## VII.    Municipal Liability of Duryea Borough

Defendants move for judgment as a matter of law on the grounds that the evidence was insufficient to support a jury verdict against Duryea Borough. Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  For a municipality or other government entity to be liable under § 1983, Plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2)

16

resulting from a policy, practice, or custom.  *Id.* at 691-94.

"Policy is made by an official statement of a 'decisionmaker possessing final authority to establish municipal policy,' and custom can be shown by the presence of a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'" *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 Fed. App'x 507, 509 (3d Cir. 2005) (non-precedential) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)) (internal quotations omitted).   Additionally, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional violation." *Id.* (citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir.2004); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir.2001)).

Defendants argue that Plaintiff failed to prove any policy or custom executed by Duryea Borough with respect to Plaintiff Guarnieri's First Amendment retaliation claim with respect to the issuance of the directives or the denial of overtime.

The Third Circuit Court of Appeals in *San Filippo v. Bongiovanni*, 30 F.3d 424, 445 (3d Cir. 1994) noted that "[a] single decision by a final policy-maker, as defined by state law, may constitute official policy." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).  In this case, there is no question that Duryea Borough Council was an official policy-making authority for Duryea Borough.  Defendant Ann Dommes testified that

> We all sat down on these directives.  Once the Philadelphia lawyers told us that we can put things in writing, we had a personnel meeting and the whole council came up with different ideas.  Everybody threw something in, what they felt they needed for the chief to do.  So we sat down.
>
> We — Lois wrote everything down as we came up with

17

them.  She sent them down to the Philadelphia lawyers, and
they looked everything over and fine tuned them into this.

(Trial Tr. vol. 1, 143:9-16, Apr. 14, 2008.)  When asked who sat down to make the

decisions, Ms. Dommes replied "All of council at that time."  (Trial Tr. vol. 1, 143:20, Apr.

14, 2008.)  She further testified that Borough Council was elected by the people of

Duryea.  (Trial Tr. vol. 1, 143:21-24, Apr. 14, 2008.)  This testimony demonstrates that

the policy in this case was enacted when Duryea Borough Council discussed and passed

the eleven (11) directives.  Therefore, on the issue of the directives, there is sufficient

evidence of policy-making by Duryea Borough for a reasonable juror to find *Monell*

liability.

The denial of Plaintiff Guarnieri's overtime pay is similarly supported by evidence

describing the actions of Duryea Borough Council.  As stated above, the testimony of

Lois Morreale evidences action on the part of Duryea Borough Council in denying Plaintiff

Guarnieri of his overtime pay.   Ms. Morreale testified that "council decided not to issue

the check for the overtime because they had told him and told him and nothing was ever

done.  So they thought about withholding his time maybe we'd get an explanation and

they would pay him, but the explanation never came.  So this — they withheld his pay."

(Trial Tr. vol. 3, 141:5-9, Apr. 16, 2008.)  Although the record does not contain evidence

of an official vote to withhold Plaintiff Guarnieri's pay, the decision to "not issue the

check" constitutes a "single decision by a final policy-maker" for purposes of *Monell*

liability.  Therefore, there is sufficient evidence for a reasonable juror to find *Monell*

liability on the issue of Plaintiff Guarnieri's overtime pay.  Therefore, the Court will deny

Defendants' motion for a judgment as a matter of law on the grounds of *Monell* liability.

**VIII.   Evidence on Causation**

The First Amendment retaliation inquiry requires the Plaintiff to demonstrate that the 2003 grievance was a substantial factor in the issuance of the January 21, 2005 directives.

The substantial factor test does not require Plaintiff to prove "but-for" causation. *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000). "'[S]ubstantial factor' does not mean 'dominant' or 'primary' factor . . . . Thus, even if a plaintiff shows that activity protected by the First Amendment was a 'substantial factor' in her [adverse action], the defendant may show that some other factor unrelated to the protected activity was the but-for cause of the [adverse action]." *Hill v. City of Scranton*, 411 F.3d 118 (3d Cir. 2005) (citations omitted).

In demonstrating substantial factor causation, the Third Circuit Court of Appeals has noted that "a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation." *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). In *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997), the Third Circuit Court of Appeals did not resolve whether the timing of an alleged retaliatory action can by itself, support a finding of causation. *Id.* The court noted that "[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). Temporal proximity is a fact-based analysis, which depends on "how proximate the events actually were, and the context [of the issue]." *Farrell v. Planters*

*Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).  For example, there is a difference

between a temporal relationship of two (2) days and nineteen (19) months.  *Id.* at 280.

A plaintiff may also prove evidence of causation besides temporal proximity.

*Farrell*, 206 F.3d at 281.  For example, a court may consider actual antagonistic conduct

or animus.  *Id.*  The record may also be viewed as a whole.  *Id.*  ("[I]t can be other

evidence gleaned from the record as a whole from which causation an be inferred.").  In

demonstrating causation, a plaintiff may put forth evidence of "any antagonism toward

the [plaintiff] or any change in demeanor toward [plaintiff]."  THIRD CIRCUIT MODEL JURY

INSTRUCTIONS, SECTION 1983 - EMPLOYMENT DISCRIMINATION - RETALIATION - FIRST

AMENDMENT, § 7.4 (2007). .

Defendants argue that there is no "temporal proximity" that may be construed as

retaliation.  First, Defendants argue that the directives were issued two years after the

filing of Plaintiff Guarnieri's termination grievance.  (Pl.'s Ex. 12.)  Second, Defendants

argue that the denial of the overtime pay occurred in December 2006, nearly one and on-

half years after the filing of this July 18, 2005 lawsuit.  (Compl., Doc. 1.) (Trial Tr. vol. 1,

82:1-4, Apr. 14, 2008.)  Furthermore, Defendants argue that the only evidence of

causation is the alleged temporal proximity.

With respect to Plaintiff Guarnieri's 2003 grievance and the issuance of the 2005

directives, there is sufficient evidence for a reasonable jury to find temporal proximity as a

means of "substantial factor" causation.  Although  the filing of the 2003 grievance by

Plaintiff Guarnieri occurred approximately two (2) years prior to the alleged retaliatory

action, a reasonable jury could still find temporal proximity.  Plaintiff Guarnieri's 2003

grievance, the protected activity, resulted in his return to work for Duryea Borough.  The

issuance of the directives occurred on January 21, 2005, the same date as Plaintiff's return to work, which was the fruition of his grievance.  Therefore, a reasonable jury could find temporal proximity based upon the fruition of Plaintiff's grievance and the issuance of the directives.

Such a link of temporal proximity does not exist between the filing of the current lawsuit and the denial of Plaintiff's overtime pay.  This lawsuit was filed in July 2005, and the denial of the overtime pay did not occur until December 2006.  Although there is an overlap of time between the lawsuit and the denial of overtime, there appears to be no temporal proximity.  However, this is not a fatal flaw.  Plaintiff may also demonstrate causation in ways besides temporal proximity, such as the existence of acts of animus.

Plaintiff Guarnieri demonstrated other "antagonism" or "change in demeanor" that could cause a reasonable jury to find "substantial factor" causation.   Plaintiff demonstrated general animus in several ways.  First, a jury could infer general animus because the directives were only directed to Plaintiff Guarnieri, and no other Duryea police officer.  (Trial Tr. vol. 2, 12:23-25, Apr. 15, 2008).  Second, Plaintiff Guarnieri offered evidence that Duryea Borough refused to accept his marriage license.  (Trial Tr. vol. 2, 69:24-70:25, Apr. 15, 2008.)  Third, Plaintiff Guarnieri put forth evidence that Defendants failed to properly put his step-daughter on his health care coverage.  (Trial Tr. vol. 2, 71:12-72:8, Apr. 15, 2008.)

Defendants argue that the denial of health and life insurance was not the result of retaliation, as found by the jury.  (Doc. 101.)  The jury found that these specific actions were not retaliatory actions for purposes of a First Amendment retaliation claim, however, these actions still may be indicative of causation, as causation can be demonstrated by

21

acts of general animus.

Based on the temporal proximity between the fruition of Plaintiff Guarnieri's grievance and the issuance of the directives, and the other evidence of general animus by Defendants towards Plaintiff Guarnieri, a reasonable jury could find "substantial factor" causation.  Therefore, the Court will deny Defendants' motion for judgment as a matter of law on these grounds.

### IX.    Evidence of Ordinary Firmness

Defendants further argue that their renewed motion for judgment as a matter of law should be granted because there was no evidence presented at trial  that the alleged retaliatory actions were sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

"The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimus*."  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted).  But, "[e]ven 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for exercising her free speech rights,' may be actionable if sufficient 'to deter a person of ordinary firmness' from exercising his or her First Amendment rights."  *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000) (citing *Rutan v. Republican Party*, 497 U.S. 62, 76 n.8 (1990)).  In *O'Connor*, the Third Circuit Court of Appeals noted that the threshold for a First Amendment retaliation claim is very low and "a cause of action is supplied by all but truly de minimus violations."  *Id.* (citing *Suppan*, 203 F.3d at 234-35).

22

_____In this regard, several pieces of record evidence support the jury's conclusion that the retaliatory acts were sufficient to deter a person of ordinary firmness. The jury found two (2) retaliatory actions - the issuance of the January 21, 2005 directives and the denial of overtime pay.  Defendants argue that the issuance of the directives were "reasonable" as per the testimony of Mayor Keith Moss.  (Trial Tr. vol. 2, 140-154, Apr. 15, 2008.) Although there is testimony by Mayor Moss that some of the directives may save the Borough some money, this alone does not mean that they are not retaliatory actions, or that the actions would not stop a person of ordinary firmness from exercising his First Amendment rights.

he January 21, 2005 directives could be found retaliatory and therefore sufficient to deter a person of ordinary firmness.  (Pl.'s Ex. 12.)  The jury was presented with the list of directives, which stated:

> 1.   Your daily shift consists of eight hours.  You are not to work more than eight hours per day or more than forty hours per week unless you receive express permission from Borough Council.  You are to go home at the end of your eight hour shift.
>
> 2.   You are not to attend council meetings as the chief of police and will not be paid for attending council meetings.  You may only attend as a citizen.
>
> 3.   You must follow the purchase order system. You personally will be responsible for getting all purchase orders signed for your department.
>
> 4.   The dayshift officer must observe the arrival and dismissal times of the Holy Rosary School.  Hours are 7:45a.m.-8:20a.m. and 2:00p.m.-2:30p.m.  This has become a daily practice and must be continued.  Any reason that this is not completed must be in writing and included in your weekly written report.

5.    You must patrol 4-5 hours during your eight hour shift. Proof of patrol will be a copy of the daily mileage log. Therefore, a copy of the daily mileage log of all shifts must be included with your weekly report to be handed in on Monday.

6.    Council will issue directives to the borough secretary and to the borough solicitor.  Any borough council directive which you receive from either the borough solicitor or the borough secretary should be treated as a directive of the borough council.  Accordingly, you are required to follow any and all directives given to you by borough council, whether directly, or indirectly through the borough secretary or the borough solicitor.

7.    You will submit a weekly written report to the borough secretary on the following Monday by 1:00 p.m.  This report shall include a detailed description of your daily activities, including the task of patrolling the Holy Rosary bus stop.  Proof of your activities shall include the time at which the tasks were performed.  In addition, you will include the starting and ending mileage on the patrol vehicle for the time in which you are patrolling.

8.    A copy of the monthly schedule for the police department must be given to the borough secretary by the first of the month.

9.    The police car is to be used for official business only. Only borough officials and passengers of officials business only are allowed in the police car.

10.   The Duryea municipal building is a smoke free building. The police department is not exempt from this smoking ban.  Random checks will be done to insure that the building is smoke free.  You will be held responsible for your department to adhere to the no smoking regulation.

11.   As Chief of Police, you are to work the dayshift, which is Monday through Friday 7:00a.m.-3:00p.m.  As your employer, Duryea Borough Council wants our Chief of Police to be visible and accessible to the public during the dayshift hours.

(*Id.*)  This list of directives was issued the day that Plaintiff Guarnieri returned to work as Chief of the Duryea Borough Police, following a grievance procedure.  A reasonable juror could find that this list would deter a person of ordinary firmness from filing a grievance in the future, as the directives could be viewed as restrictive by a reasonable juror.

Similarly, the jury found that Defendants denied Plaintiff Guarnieri overtime pay in retaliation for filing his grievance.  The record reflects that Plaintiff Guarnieri was not paid three-hundred and thirty-eight dollars ($338.00) in overtime pay.  (Trial Tr. 162:1-3, Apr. 15, 2008.)

Viewing the evidence in the light most favorable to Plaintiff Guarnieri, there is a legally sufficient basis for a reasonable juror to find that Defendants' actions would deter a person of ordinary firmness from exercising his rights. The test does not require that Plaintiff Guarnieri actually be deterred, but that a person of ordinary firmness be deterred from exercising his First Amendment rights.  Therefore, the Court will deny the Defendants' Rule 50 motion on these grounds.

### X.   Arbitrator's Report

Defendants argue that they should be granted a new trial on the grounds that the Court erred in refusing to allow the Defendants to present and read to the jury certain sections of the arbitrator's report reinstating Plaintiff to his employment.  The Court ruled that the arbitrator's report was hearsay, and therefore inadmissible.

Defendants note that when Plaintiff initially sought to have the arbitrator's report introduced, Defendants objected on the grounds of hearsay and lack of personal knowledge by the witness.  (Trial Tr. vol. 1, 60:21-61:6, Apr. 14, 2008.)  The Court sustained the objection, and did not allow into evidence the findings of the arbitrator on

25

the grounds of hearsay and lack of personal knowledge.  (Trial Tr. vol. 1, 60:21-61:6, Apr.

14, 2008.)  Defendants later attempted to introduce the report of the arbitrator after the

exhibit had been discussed on the cross-examination of Scott Blissman by Plaintiff's

counsel.  The Court denied Defendants' request to admit the report into evidence.  (Trial

Tr. vol. 3, 76:12-23, Apr. 16, 2008.)

Defendants' argument is not that the arbitrator's report is hearsay, but rather that

the Court's refusal to admit the report of the arbitrator following the cross-examination of

Scott Blissman was prejudicial.  Defendants argue that the jury did not fully understand

the findings of the arbitrator, as they only heard pieces of the arbitrator's report.  On this

basis, Defendants argue that the Court's refusal to enter the arbitrator's report into

evidence is grounds for a new trial.  In contrast, Plaintiff argues that because Defendants

initially objected to the introduction of the arbitrator's report, they cannot now base a post-

trial motion on the failure to include the exhibit.

Hearsay is "a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted."  FED. R.

EVID. 801(c). As held during trial, the report of the arbitrator is hearsay, and it does not

fall within any of the exceptions to the hearsay rule.  FED. R. EVID. 802,  803, 804.

"Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by

other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of

Congress."  FED. R. EVID. 802.  If a hearsay statement does not fall within the hearsay

exceptions enumerated in Rules 803 and 804, it may still be admissible under the

residual exception if the statement has " equivalent circumstantial guarantees of

trustworthiness" and the court determines that:

(A)     the statement is offered as evidence of a material fact;

(B)     the statement is more probative on the point for which it
is offered than any other evidence which the proponent
can procure through reasonable efforts; and

(C)     the general purposes of these rules and the interests of
justice will best be served by admission of the
statement into evidence.

FED. R. EVID. 807.  But, a statement may not be admitted under the residual exception

"unless the proponent of it makes known to the adverse party sufficiently in advance of

the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet

it, the proponent's intention to offer the statement and the particulars of it, including the

name and address of the declarant."  FED. R. EVID. 807.  In this case, the report of the

arbitrator does not properly fall within the residual exception to the hearsay rule.  The

"interests of justice" would not be served by permitting a legal decision made by an

arbitrator before the jury.  The arbitrator made his decision on facts other than those

submitted into evidence in this case.  It would be unduly prejudicial to place before a jury

findings by an arbitrator on a similar issue, when the arbitrator's report is hearsay and

based on evidence not in this record.  Therefore, the report of the arbitrator does not

properly fall within the residual hearsay exception.

Defendants further argue that the Court failed to permit the introduction of the

arbitrator's report after the discussion of the report by the Plaintiff, and that the failure to

permit the report into evidence was prejudicial.  In support, Defendants cite numerous

references to Plaintiff Guarnieri's termination.  The references listed by Defendants are:

(1)     Plaintiff's examination of Alfred Akulonis (Trial Tr. vol.
1, 57-58, 59, 61, 103, Apr. 14, 2008);

(2)     Plaintiff's examination of Ann Dommes (Trial Tr. vol. 1, 113, 140, 168, Apr. 14, 2008);

(3)     Plaintiff's examination of Joe Mangan (Trial Tr. vol. 2, 15, Apr. 15, 2008);

(4)     Plaintiff's examination of Patrick Wall (Trial Tr. vol. 2, 40, Apr. 15, 2008);

(5)     Plaintiff's examination of Plaintiff Guarnieri (Trial Tr. vol. 2, 52, Apr. 15, 2008);

(6)     Plaintiff's examination of Mayor Keith Moss (Trial Tr. vol. 2, 104, 105, 169, Apr. 15, 2008);

(7)     Plaintiff's cross-examination of Scott Blissman (Trial Tr. vol. 3, 57-60, 68-69, 75, Apr. 16, 2008);

(8)     Plaintiff's opening and closing statements.

The Court has reviewed the references to the arbitration report listed by the Defendants.   In many cases, Defendants did not object to the testimony on grounds of relevance with respect to testimony regarding Plaintiff Guarnieri's termination or the arbitration.  In some instances, the Defendants themselves raised these issues.  In many of the instances where Defendants did object, the Court sustained Defendants' objections, and did not permit the prejudicial evidence into the record.  (Trial Tr. vol. 1, 61 Apr. 14, 2008; Trial Tr. vol. 2, 15, 40, 104:10-23, Apr. 15, 2008.)  The cross-examination of Scott Blissman included the most discussion regarding the termination of Plaintiff Guarnieri and the subsequent arbitrator's report.  (Trial Tr. vol. 3, 47, Apr. 16, 2008.) When Defendants objected to the line of questioning regarding Plaintiff Guarnieri's termination, that objection was sustained.  (Trial Tr. vol. 3, 49:14-24, Apr. 16, 2008.) Furthermore, the merits of Plaintiff Guarnieri's termination were not at issue in this case. (Trial Tr. vol. 3, 76:12-19, Apr. 16, 2008.)  The fact that the termination and the

28

arbitrator's report were discussed at various points by both Plaintiff and Defendants does not require the arbitrator's report to be entered into evidence.

The refusal of the Court to enter the arbitrator's report into evidence does not constitute a significant error of law that would entitle the Defendants to a new trial.  For these reasons, the Court will deny Defendants' motion for a new trial.

### XI.    Motion  for Stay of Proceedings to Enforce Judgment

Defendants have filed a motion to stay the enforcement of the judgment pursuant to Federal Rule of Civil Procedure 62(b).  (Doc. 127.)  Rule 62(b) provides that

> [o]n appropriate terms for the opposing party's security, the court may stay the execution of a judgment - or any proceedings to enforce it - pending the disposition of any of the following motions: (1) under Rule 50, for a judgment as a matter of law; (2) under Rule 52(b), to amend the findings or for additional findings; (3) under Rule 59, for a new trial or to alter or amend a judgment; or (4) under Rule 60, for relief from a judgment or order.

FED. R. CIV. P. 62(b).  The Order accompanying this Memorandum disposes of all pending motions pursuant to Rules 50 and 59.  Therefore, the Court will deny Defendants' request as moot.

### CONCLUSION

For the reasons stated above, Defendants' renewed motion for judgment as a matter of law (Doc. 121), motion for a new trial (Doc. 121), and motion to stay enforcement of the judgment (Doc. 127) are denied.

An appropriate Order follows.


September 2, 2008                              /s/ A. Richard Caputo
Date                                          A. Richard Caputo
                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES GUARNIERI,

     Plaintiff,

        v.

DURYEA BOROUGH, et al.,

     Defendants.

NO. 3:05-CV-01422

(JUDGE CAPUTO)

<u>**ORDER**</u>

**NOW**, this 2nd  day of September, 2008, **IT IS HEREBY ORDERED** that:

    (1)    Defendants' renewed motion for judgment as a matter of law pursuant to Rule 50 and motion for a new trial (Doc. 121) pursuant to Rule 59 are **DENIED**.

    (2)    Defendants' motion to stay the enforcement of the judgment pursuant to Federal Rule of Civil Procedure 62(b)  (Doc. 127) is **DENIED** as moot.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge